IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| STACY NELSON,<br><br>  Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>  Defendant. | Cause No. CV-23-60-GF-JTJ<br><br><br><br>**ORDER** |

## INTRODUCTION

Stacy Nelson ("Nelson") brings this action under 42 U.S.C. § 405(g), seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner"). (Doc. 2.) Nelson asks the Court to grant her social security disability insurance benefits and supplemental security income benefits or alternatively, to remand this action for further hearing. (*Id.* at 2.) The Commissioner opposes Nelson's motion. (Doc. 11 at 11.)

## JURISDICTION

The Court retains jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Nelson resides in Lewistown, Fergus County, Montana. 28 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3). (Doc. 2 at 1–2.)

1

## PROCEDURAL BACKGROUND

Nelson filed an application for Title II disability insurance benefits and Title XVI supplemental security income benefits on February 9, 2021. (Doc. 8 at 373–76.) Nelson's claims were denied upon initial review and on reconsideration. (*Id.* at 206–14; 226–37.) Nelson requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 304.) The ALJ issued an unfavorable decision on June 14, 2023. (*Id.* at 24–49.) The Appeals Council denied Nelson's request to review that decision. (*Id.* at 7–10.) This denial rendered the ALJ's decision the final decision of the Commissioner. *Luther v. Berryhill*, 891 F.3d 872, 876 (9th Cir. 2018).

## STANDARD OF REVIEW

The Court reviews the Commissioner's final decision under the substantial evidence standard. *See* 42 U.S.C. § 405(g). The decision will be disturbed only if it is not supported by substantial evidence or is based on legal error. *See id.*; *see also Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 678 (9th Cir. 2005) (internal citations omitted). "Substantial evidence means more than a scintilla, but less than a preponderance." *Smolen*, 80 F.3d at 1279 (internal quotations omitted).

The Court must "consider the record as a whole, weighing both the evidence that supports and detracts from the [Commissioner's] conclusion." *Green v.*

2

*Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not supported by substantial evidence in the record, but it may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999).

**DISABILITY CRITERIA**

A claimant is disabled for purposes of the Social Security Act if (1) the claimant "suffers from a 'medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months'" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is unable to perform their previous work and also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (quoting 42 U.S.C. § 1382c(a)(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. § 416.920. The five steps are as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to

    step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.     Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.     Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), (e) 416.920(d), (e).

4.     Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

5.     Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof in the first four steps. *Id.* at 953. The Commissioner bears the burden at step five. *Id.* at 953–54.

## FACTUAL BACKGROUND

### I. ALJ Determination

The ALJ determined at the first step that Nelson met the insured status requirements. (Doc. 8 at 27.) The ALJ further determined that Nelson had not engaged in substantial gainful activity since her alleged onset date. (*Id.*) The ALJ noted earnings through the second quarter of 2021 and uncertainty regarding when Nelson's employer terminated her employment. The ALJ adopted, however, the

4

alleged onset date of January 27, 2021. (*Id.*)

The ALJ determined at step two that Nelson suffered from the following severe impairments: bipolar affective disorder, generalized anxiety disorder, major depressive disorder, mood disorder, adult attention deficit/hyperactivity disorder, posttraumatic stress disorder, personality disorder, and seizure disorder/epilepsy. (*Id.*) The ALJ determined that the fibromyalgia and irritable bowel syndrome noted by Dr. Annette Comes failed to meet the definition of a medically determinable impairment. (*Id.* at 31.) The ALJ noted that these conditions had not been diagnosed previously, that Dr. Comes had not performed an evaluation or exclusionary testing to diagnose fibromyalgia, and that no other provider adopted the diagnoses or treated Nelson for such conditions. (*Id.*)

The ALJ noted that Nelson also suffered from migraines, asthma, and hypokalemia. (*Id.* at 28.) The ALJ determined, however, that these conditions proved non-severe. (*Id.*) The ALJ noted that Nelson's headaches failed to meet the criteria for complicated migraines, Nelson suffered few/nominal complications related to her asthma, and Nelson's hypokalemia proved amenable to treatment. (*Id.*) The ALJ also rejected the presence of any medically determinable back impairment, substance use disorder, or delusional disorder. (*Id.* at 29–30.) The ALJ reasoned that Nelson had only raised complaints of back pain after her slip-and-fall and that x-ray examinations had resulted in no acute findings. (*Id.* at 29.) The ALJ

5

further reasoned that Nelson had never been diagnosed with a substance use disorder. (*Id.*) Finally, in rejecting the delusional disorder, the ALJ noted that none of Nelson's psychiatric providers assessed a delusional disorder and that Nelson had reported no hallucinations in her recent psychiatric evaluations. (*Id.* at 30.)

At step three, the ALJ found that Nelson lacked an impairment or combination of impairments that met or medically equaled the severity described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1, the Social Security regulations. (*Id.* at 1034.)

At step four, the ALJ determined Nelson's residual functional capacity ("RFC"). (*Id.* at 32.) The ALJ followed a two-step process. The ALJ determined that Nelson's "medically determinable impairments could reasonably be expected to produce [Nelson's] symptoms." (*Id.* at 35.) The ALJ concluded, however, that Nelson's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ determined that Nelson possesses the RFC to perform work at all exertional levels but with non-exertional restrictions as follows:

> the claimant is frequently able to climb ramps and/or stairs, is never able to climb ladders, ropes, or scaffolds, is frequently able to balance, and must avoid concentrated exposure to temperature extremes, to fumes, odors, dust, gases, and to poor ventilation, and to hazards. The claimant requires normal work breaks defined as occurring every two

> hours with two breaks lasting at least 10 minutes and one break lasting at least 30 minutes. The claimant is able to understand, remember, and carry out simple tasks, and is able to maintain attention, concentration, persistence, and pace for such tasks for eight-hour workdays and 40-hour workweeks. The claimant is able to tolerate occasional interaction with supervisors, coworkers, and the public, is able to tolerate usual work situations within the parameters of this hypothetical, is able to tolerate occasional changes in routine work settings, and the claimant cannot work at a fast or fixed production rate or pace but is able to perform goal-oriented work.

(*Id.* at 32.) The ALJ determined that Nelson lacked the RFC to perform her past relevant work as a server, shipping clerk, or radio announcer. (*Id.* at 47.)

At step five, the ALJ found that Nelson proved capable of engaging in other work that existed in significant numbers in the national economy. (*Id.* at 47.) The vocational expert ("VE") identified the following jobs that exist for a person with Nelson's RFC, age, education, and work experience: marker, mail clerk, rural mail carrier, and scrap sorter. (*Id.* at 48.) Accordingly, the ALJ found Nelson "not disabled" under the relevant sections of the Social Security Act. (*Id.* at 49.)

II. Nelson's Position

Nelson contends that the ALJ failed to adequately evaluate the opinion of Dr. Comes. (Doc. 10 at 1.) Nelson argues that the ALJ's alleged failure to sufficiently explain her analysis of the opinion of Dr. Comes resulted in the omission of pertinent restrictions and an RFC "not supported by substantial evidence." (*Id.*)

III. Commissioner's Position

7

The Commissioner asserts that the ALJ reasonably evaluated Dr. Comes's opinion. (Doc. 11 at 5.) The Commissioner argues that the ALJ, in rejecting the limitations proffered by Dr. Comes, properly determined that Dr. Comes's opinion lacked supportability and consistency. (*Id.* at 5–7.)

## DISCUSSION

**I.** Whether the ALJ failed to properly evaluate the opinion of Dr. Comes

Nelson raises issues with the ALJ's evaluation of the opinion of Dr. Comes. Consistency and supportability constitute the most important factors in evaluating the persuasiveness of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Consistency means the extent to which medical opinions or findings prove consistent with the evidence from other medical and nonmedical sources in the claim. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Supportability means the extent to which a medical source supports a medical opinion with objective medical evidence and explanations pertaining thereto. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

Dr. Comes began treating Nelson in August of 2020. (Doc. 8 at 647–48.) Dr. Comes submitted a letter dated October 1, 2021, outlining her opinion that Nelson proved incapable of working. (*Id.* at 1065.) Dr. Comes highlighted Nelson's three hospitalizations in the previous seven months. (*Id.*) Dr. Comes opined that Nelson suffered from significant mental illness and from physical disabilities including a

seizure disorder, generalized weakness, low potassium, and imbalance issues. (*Id.*)

Dr. Comes submitted a medical source statement on April 25, 2022, that set forth her opinion on Nelson's limitations in performing work. (*Id.* at 1267–72.) Dr. Comes limited Nelson to sitting, standing, and walking twenty minutes each in an eight-hour workday. (*Id.* at 1267.) Dr. Comes opined that Nelson needed a cane to ambulate, never could finger, feel, or handle, and only occasionally could reach. (*Id.* at 1267–68.) Dr. Comes further opined that Nelson could never balance, stoop, climb ladders, or kneel, could climb stairs only occasionally, and could not read a computer screen, small print, or ordinary book print. (*Id.* at 1270.) Dr. Comes's statement opined that Nelson's condition would cause more than four absences per month and cause Nelson to be off-task at least 20% of the workday. (*Id.* at 1271.) Dr. Comes also opined that Nelson's conditions resulted in either "marked" or "extreme" limitations on every mental ability needed for work. (*Id.* at 1275.)

The ALJ found Dr. Comes's opinion unsupported and unpersuasive. (*Id.* at 44.) The ALJ adequately evaluated the consistency and supportability of Dr. Comes's opinion. The ALJ highlighted portions of Dr. Comes's opinion that Dr. Comes failed to explain. First, the ALJ observed that Dr. Comes's statements provided information on a "largely checkbox [form] with minimal narrative support." (*Id.*) "While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-

9

off reports that do not contain any explanation of the bases of their conclusions." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (internal quotations and citations omitted). The ALJ appropriately discounted the persuasiveness of the opinions expressed by Dr. Comes that she failed to explain, such as why Nelson would miss at least four days per month or be off-task 20% of the workday.

The ALJ also highlighted other areas of Dr. Comes's opinion that seemed unsupported by Dr. Comes's own observations. For example, the ALJ noted that Dr. Comes characterized Nelson's decline as a "chronic and permanent condition" in a letter dated March 11, 2021. (*Id.* at 40.) The ALJ notes that observations made in Dr. Comes's treatment notes just one month earlier undermines this conclusion. (*Id.* at 38–40.) Specifically, Nelson had displayed a recent downward spiral, had become upset when Dr. Comes sought a urine sample for drug testing, and tested positive for amphetamines in that test and when hospitalized for her mental health episode in March of 2021. (*Id.* at 912, 1439.) Nelson reportedly tested positive for methamphetamine when she was hospitalized in August of 2021. (*Id.* at 1022–23.) The ALJ determined that Nelson's recent spiral and positive toxicology tests despite Nelson's claims that she had not taken her medications undermined a conclusion that Nelson's condition proved chronic and permanent. (*Id.* at 40.)

The ALJ noted other areas of Dr. Comes's opinion that remained unexplained and unsupported by medical evidence. The ALJ emphasized that Dr.

10

Comes listed fibromyalgia and irritable bowel syndrome as conditions contributing to Nelson's mental symptoms but that Dr. Comes never diagnosed those disorders nor had any other provider. (*Id.* at 45.) The ALJ also highlighted that Dr. Comes opined only "marked" or "extreme" limitations on Nelson's mental abilities but indicated on the same form that Nelson had a stable, fair prognosis. (*Id.* at 45; *compare id.* at 1273 *to id.* at 1274–75.)

The ALJ recognized that Dr. Comes's observations about Nelson's improvement since her last hospitalization failed to support the existence of a permanent condition with extreme limitations. (*Id.* at 45.) Dr. Comes's progress note from March 23, 2022, describes Nelson as alert, oriented, and "doing much better." (*Id.* at 43, 1143–44.) The note further indicates that Nelson's seizure disorder is under control, and Nelson raised no complaints at the appointment regarding hallucinations or other mental conditions. (*Id.* at 43, 1144.) Dr. Comes's progress note from September 12, 2022, depicts Nelson's seizure condition as stable, notes that Nelson is seeing psychiatry, and notes that Nelson appears a little more hypomanic but has normal affect, normal speech, and is oriented. (*Id.* at 1732.) Contrary to Nelson's allegations, the ALJ did not "support [her] decision with mischaracterizations of the record." (Doc. 10 at 9.)

The ALJ also noted specific facts in the record that contradicted Dr. Comes's opinion. The ALJ determined that Dr. Comes's opinion of a chronic,

11

unstable condition proved inconsistent with "[r]ecords in late 2022/early 2023 wherein the claimant reported her mood as [ ] stable and wherein she reported no significant concerns physically or mentally, specifically acknowledging the effectiveness of her psychotropic medication regimen." (Doc. 8 at 40.) Dr. Comes's opinion as to Nelson's instability and inability to work also prove inconsistent with the fact that Nelson's mental health episodes coincide with medication non-compliance and improve rapidly upon treatment. (*Id.* at 42.) The ALJ noted that after Nelson began psychiatric treatment in late 2021, the only complaint that Nelson presented to Dr. Comes related to back pain from a slip and fall. (*Id.* at 43.)

Substantial evidence exists in the record to support the ALJ's conclusion that Dr. Comes's opinion proved inconsistent and unsupported. As noted by the ALJ, nothing in the record supports the physical limitations proffered by Dr. Comes. Nothing suggests that Nelson cannot finger through documents or read ordinary book print text. Dr. Comes failed to provide any explanation as to how Nelson's conditions warranted such limitations. Additionally, as determined by the ALJ, the timing of Nelson's mental health episodes, her quick recoveries therefrom, and her apparent mental stability since establishing psychiatric treatment undermine Dr. Comes's opinion that Nelson remains unstable and incapable of work. The ALJ did not err in finding Dr. Comes's opinion unpersuasive.

The ALJ's determination as to a claimant's RFC must be "based on all the relevant medical and other evidence in the individual's case record." SSR 16-3, 82 Fed. Reg. at 49468. Relevant considerations include "[m]edical history, [m]edical signs and laboratory findings, [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), [and] [r]eports of daily activities." Social Security Ruling (SSR) 96-8p Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34474, 34477 (July 2, 1996) ("SSR 96-8p"). The RFC assessment must consider medical source opinions and explain any conflicts with those opinions. *Id.* at 34478.

The ALJ went through a detailed analysis of Dr. Comes's opinion and explained the portions of that opinion that the ALJ rejected in determining Nelson's RFC. The Court already has determined that substantial evidence supported the ALJ's determination that Dr. Comes's opinions proved unpersuasive. The ALJ clearly explained where Dr. Comes's opinion and recommended limitations were not supported by or consistent with objective medical evidence and other record evidence in accordance with SSR 96-8p.

## CONCLUSION

The Court finds that substantial evidence exists in the record to support the ALJ's determination that Dr. Comes's opinion proved unpersuasive. The Court

also finds that substantial evidence exists to support the ALJ's rejection of the RFC limitations offered by Dr. Comes. The ALJ did not err in these determinations.

## ORDER

Accordingly, **IT IS ORDERED:**

1. The Commissioner's final decision denying Nelson's claim for Title II disability benefits and Title XVI supplemental security income benefits is **AFFIRMED.**

2. This case is **DISMISSED** with prejudice.

3. The Clerk of Court is directed to enter judgment accordingly.

   DATED this 16th day of April, 2024.

_____
John Johnston
United States Magistrate Judge